## RICHARDS et al. v. LOWERY.

No. 18466. Opinion Filed Jan. 8, 1929.

Rehearing Denied March 12, 1929.

J. A. Bass and Champion Champion & Fischl, for plaintiffs in error.

R. L. Disney, for defendant in error.

JEFFREY, C. This action was begun by Miller Emmett Lowery, as plaintiff, against C. W. Richards, Corrine Richards, and a number of other defendants, in the district court of Carter county, for the cancellation of a guardian's deed to, and a number of other conveyances affecting the title of, 180 acres of land, the same being the allotment of plaintiff, who was a member of the Choctaw Indian Tribe, and for an accounting of rents and profits. The validity of the guardian's sale, by which the defendants Richards claimed title, was tried, and a judgment rendered in favor of the defendants. Plaintiff appealed from that judgment, and the Supreme Court, in the case of Lowery v. Richards, 120 Okla. 261, 248 Pac. 622, reversed the judgment of the trial court, and directed the trial court to enter judgment in plaintiff's favor, and remanded the cause for a trial upon the accounting feature of the case. On May 9, 1927, a trial was had on the accounting feature of the case. It was agreed at the trial that C. W. Richards came into possession of the land in 1912; that the rental or usable value of the land was $200 per year. Plaintiff then put in evidence, over the objection of the defendants, several oil and gas leases, which had been executed by C. W. Richards and Corrine Richards, his wife, on the land in question, as follows:

Oil and gas lease dated April 9, 1914, to E. T. Richards, trustee, for $2,000; an oil and gas lease dated June 19, 1916, to Max Westheimer and Dave Daube for $1,500; an oil and gas lease to McMan Oil Company for $2,250; an oil and gas lease dated December 22, 1919, from Richards to Corrine Richards, in consideration of love and affection and the covenants and agreements therein contained; and an assignment of the lease from C. W. Richards to Corrine Richards, dated July 14, 1920, to the Carter Oil Company, reciting a consideration of $1, and other good and valuable consideration. Plaintiff's evidence showed that the actual consideration for the assignment was $30,000. Defendant C. W. Richards placed in evidence the amount of purchase price paid by him for the land, the amount of permanent and lasting improvements placed thereon, and the trial court found that C. W. Richards and Corrine Richards were due to account to plaintiff for the sum of $30,000, and that C. W. Richards was due to account to plaintiff for the sum of $8,250, and that C. W. Richards was entitled to a credit of $2,943.25, leaving a balance due and owing plaintiff in the total sum of $34,306.75. Thereupon the court rendered judgment in favor of plaintiff and against the defendant C. W. Richards, in the sum of $4,306.75, and against C. W. Richards and Corrine Richards in the sum of $30,000. From this judgment the defendants C. W. Richards and Corrine Richards have appealed.

The first objection urged against the judg-

ment rendered is that Richards entered upon the land in controversy as a trespasser only; and that plaintiff's rights under such circumstances, are governed by section 5997, C. O. S. 1921. That section is as follows:

"The detriment caused by the wrongful occupation of real property, in cases not embraced in sections 5998, 6004, 6005, and 6006, is deemed to be the value of the use of the property for the time of such occupation, not exceeding six years next preceding the commencement of the action or proceeding to enforce the right to damages, and the costs, if any, of recovering the possession."

On the former appeal this court held that the guardian's deed and other conveyances through which Richards claimed title were void by reason of certain acts on the part of the guardian and Richards, which amounted to a constructive fraud upon the ward and the probate court. It is then contended that the above and foregoing provision of the statutes gives plaintiff his only remedy, which is a recovery of the land and the usable value of the property during the time it was occupied by Richards, not exceeding six years next preceding the commencement of the action. Counsel for defendants by their brief recognized the fact that plaintiff sought to bring his action as one in equity for the purpose of treating Richards as a trustee for Lowery and for an accounting. But, as we understand their argument, it is contended that since plaintiff had a legal remedy, as provided by section 5997, supra, equity will not afford the relief sought; and that, measured by the legal remedy, plaintiff could not compel defendants to account for the sums received for oil and gas leases, since these sums could not be said to be usable value of the property. Counsel's contention might be true if the action were brought for damages caused by the wrongful occupation of real property, and did not come within the exceptions named in that section. However, it would seem that, if plaintiff had elected to ask for damages, his case would fall within section 5998, C. O. S. 1921, which provides that, in an action against a guardian or trustee for an infant for unlawfully holding over real property without the consent of the party immediately entitled to possession, the measure of damages is the value of the profits received during such holding over. Neither can we agree that section 5997 can control as to the period for which damages may be recovered as in this case. Section 186, C. O. S. 1921, gives one under disability a right to bring his action within one year after such disability shall be removed. This is a special statute, and must control as to cases which come within its terms.

The general rule is well stated that, where a party has a full and complete legal remedy, equity will not assume jurisdiction and afford a remedy. But this does not mean that a party is bound to waive certain equitable remedies and certain rights which would be protected by equity, and take a legal remedy which will not adequately and completely give him the relief to which he is entitled. The legal remedy must be adequate. From an examination of the amended petition, on which both phases of the case were tried, it must be denominated an equitable proceeding. The petition recited that plaintiff was allotted, as a member of the Choctaw Tribe of Indians, the lands in question; that the defendants claimed some right, title or interest therein, as appeared from the records of the county clerk, but that all of the conveyances under which the defendants claimed title were null and void for the reason that they were all predicated upon a certain guardian's sale, which sale was fraudulent, null and void. The petition further recited that plaintiff had only within the past few months attained his majority. Plaintiff then prayed that a decree be entered canceling all conveyances including certain orders and judgments pertaining to his title; that his title be quieted and the defendants be required to account for the rents and profits from said lands. Defendants answered, setting up their title, and asked that title be quieted in C. W. Richards. Plaintiff does not ask for possession of the land, nor for damages by reason of wrongful detention. The action was primarily and solely one in equity, and the nature thereof was not changed by any subsequent pleading or issue formed.

Under the record, is plaintiff entitled in equity to treat the defendant C. W. Richards as a constructive trustee while in possession of the land, and, if so, for what may said trustee be required to account? As heretofore pointed out, the opinion of this court on the former appeal of this case, holding the guardian's deed to be void, was based upon the fact that a constructive fraud had been perpetrated upon the probate court and upon the ward's estate in securing the approval of the sale and the issuance of the guardian's deed. It is the general rule, that where one obtains the legal title or right to property by actual fraud, undue influence, taking advantage of one's weakness, or necessities, or through any other similar cir-

cumstances, although not amounting to fraud, which renders it unconscientious for the holder of the legal title to retain it and enjoy the beneficial interest, equity will impress a constructive trust on the property so acquired in favor of the person who is equitably entitled to the same. And in such cases equity has jurisdiction to reach the property in the hands of anyone except an innocent purchaser for value, who may take it relieved from the trust. Rollow v. Taylor, 104 Okla. 275, 231 Pac. 224; Hayden v. Dannenberg, 42 Okla. 776, 143 Pac. 859; Lowe v. Dickson, 108 Okla. 241, 236 Pac. 399; Pomeroy's Equity Jurisprudence (4th Ed.) p. 2404. In the case of Lowe v. Dickson, supra, the rule is briefly stated thus:

"The principle is well settled that where one party has acquired the legal title to property to which another has the better right, a court of equity will convert him into a trustee of the true owner and compel him to convey the legal title."

Under the circumstances, plaintiff was not confined to his legal remedy, but had a right to appeal to a court of equity for his remedies, and to hold C. W. Richards to accountability as his constructive trustee.

May a trustee, as in this case, be permitted to make incidental profits for himself in the management of the trust res, or pecuniary gain from the trust relation? In other words, should Richards be required to account for the proceeds from the sale of several oil and gas leases on the premises? It appears that none of the leases were in force at the time plaintiff's land was returned to him, and there is no evidence that the land was drilled for oil and gas, or condemned for that purpose on account of the making of the leases. Defendants contend that since the land was returned in at least as good condition as it was at the time of the guardian's sale, and without its value for oil and gas having depreciated on account of the acts of Richards, plaintiff was not injured by reason of the purported leases having been executed, and that under no theory is he entitled to the profits which they were able to make in this manner.

Trustees generally are held to the strictest accountability to their beneficiaries for all profits and pecuniary gains acquired out of, or by reason of, the trust estate or trust relation.

"Where the grantor is entitled to cancellation of the deed on the ground of fraud, he is also entitled to the rents and profits of the land for the time that the grantee was wrongfully in possession," 9 C. J. 1264.

"It is a well settled principle of equity, that wherever a trustee deals with the trust estate for his own personal profit, he shall account to the cestui que trust for all of the gain which he has made. If he uses the trust money in speculation, dangerous though profitable, the risk will be his own, but profit will inure to the cestui que trust, even though no injury was intended, and none was in fact done to the trust estate." 26 R. C. L. 1388.

"* * * It is equally imperative upon the trustee, in his dealings with trust property, not to use it in his own private business, not to make any incidental profits for himself, in its management, and not to acquire any pecuniary gains from his fiduciary position. The beneficiary is entitled to claim all advantages actually gained, and to hold the trustee chargeable for all losses in any way happening, from a violation of this duty." Pomeroy's Equity Jurisprudence (4th Ed.) p. 2468.

Bonus paid for oil and gas leases has been held to be a part of the royalty or rental in a lump sum or down payment. It has also been styled as income from the use of the mineral resources of the land. Work v. United States, 261 U. S. 352; Wright v. Carter Oil Co., 97 Okla. 46, 223 Pac. 835. But whether bonus be termed a royalty, income, or what not, the bonuses secured from these leases were profits, pecuniary gains, and advantages acquired by Richards by the use of the trust estate, and by reason of the position he occupied. These sums of money so received were the fruits of a transaction heretofore held by this court to be fraudulent, and it matters not whether the production of such profits worked an injury to the land. Defendants' liability is not based on injury or detriment to the land, but is measured by rules of equity which prohibit one in such position from receiving a gain or profit by reason of his conduct and position.

Counsel for defendants cite a number of cases from this court in support of their contention that the amount of recovery in this case is limited to the value of the use of the property for the time occupied, as provided by section 5997, C. O. S. 1921. We shall not attempt to distinguish each case separately, but an examination of them discloses that in every instance the action was one at law. In some of the cases the primary purpose of the action was to recover specific real property, and incidentally to quiet title and recover damages for the wrongful occupation of such property. In other cases, the action was solely to recover damages. In either event, the aggrieved party would be limited to the relief

provided by said provision of the statute. But none of these cases have any application to a suit in equity of this character.

It is next contended, in effect, that the evidence is not sufficient to support a joint judgment against C. W. Richards and Corrine Richards for the sum of $30,000, the proceeds from an assignment of an oil and gas lease by Corrine Richards to the Carter Oil Company. It is argued that Corrine Richards never claimed title to the land, and was never in the wrongful occupation of said land. It is further argued that there is no evidence that C. W. Richards benefited in the least from this transaction, but, on the contrary, that Corrine Richards received the entire consideration for said assignment. The record discloses that C. W. Richards had, on former occasions, given three separate oil and gas leases upon portions of the land involved and received therefor substantial considerations. That he gave to his wife an oil and gas lease on said land in consideration of love and affection and the covenants and agreements therein contained. This lease is dated December 22, 1919, but not recorded at that time. On June 14, 1920, Corrine Richards executed an assignment to the Carter Oil Company of this lease. The assignment recites a consideration of $1, and other good and valuable consideration, while, as a matter of fact, the actual consideration paid was $30,000. The lease from Richards to his wife was not placed of record until July 15, 1920, one day after the execution of the assignment. The evidence further discloses that C. W. Richards furnished the oil company with an abstract of title to said land, and that the abstract was later returned to C. W. Richards. This evidence was all produced by plaintiff. C. W. Richards testified in the trial of the case, but gave no testimony touching this transaction. Corrine Richards gave no testimony whatever. Some of the authorities are to the effect that a trustee is liable to account for all rents, profits, issues and income which he has actually received, or which he might, with the exercise of reasonable care and diligence, have received. However, we are of the opinion that the evidence is sufficient to support the judgment rendered in this case without invoking such a strict rule. The evidence is by no means conclusive that there was collusion between Richards and his wife in this transaction, whereby she was merely used as a conduit for the purpose of passing title and making a profit, but there are circumstances, shown by the evidence, which we cannot overlook in this character of case. The same degree of proof necessary to establish fraud or collusion in actions at law is not required to satisfy the mind of a chancellor. Rules of equity are especially adapted to cases where justice and good conscience call for relief which is without the pale of the rigid rules of law. Fraud must be proved at law, but may be presumed in equity. Circumstances suspicious in their nature and known as badges of fraud, which overhang a transaction, may be deemed as unsatisfactory proof in a law action, but regarded entirely sufficient upon which to grant equitable relief. Wimberly v. Winstock et al., 46 Okla. 645, 149 Pac. 238; Lewis v. Manning et al., 123 Okla. 297, 253 Pac. 281. The very nature of this case is reason for the rule that a less degree of proof is required to establish fraud and collusion in equity than in law actions. In Brooks v. Garner, 20 Okla. 236, 94 Pac. 694, this court had occasion to deal with a somewhat similar situation in the following language:

"This suit is one to declare a constructive trust. The facts growing out of legal and actual fraud, and, as usual, the evidence thereof are largely in the breasts of the parties perpetrating it. This condition is particularly true in cases where the question of good faith is involved. The plaintiff, by reason of this inherent situation, lacks the power of delving into the minds of the parties and drawing forth physical evidence of the evil motives of his adversaries; and he is thereby driven to the necessity of establishing it by circumstantial evidence, and by proving acts which are known in law as badges of fraud."

The opinion of this court on the former appeal of this case canceled the conveyances by which Richards claimed title, and, in effect, held that he was accountable as constructive trustee. He was then bound upon the trial of the accounting question to make a full disclosure concerning his management of the trust estate. Corrine Richards was a defendant in the action from the beginning. She occupied the intimate position of a wife and the recipient of a purported interest in real estate, in which her husband had no title, but which he acquired in a manner not authorized by law, inconsistent with equitable principles, and held for the benefit of plaintiff. These facts and circumstances were produced in evidence, but neither defendant saw fit to make a disclosure of the true facts as to whether C. W. Richards benefited by the transaction, although the burden was upon them to ac-

count to plaintiff for rents and profits of whatsoever nature from the land. In this jurisdiction a transaction between husband and wife will be more closely scrutinized than if it were between strangers. As heretofore stated, we find no direct evidence of collusion or evil and base motives between the two defendants, but as the record stands it presents a very strong appearance of a single transaction, whereby C. W. Richards conveyed to the Carter Oil Company an oil and gas lease on plaintiff's land.

In so far as plaintiff's rights are concerned, the most favorable interpretation for either of the defendants that can be placed upon the transfer from Richards to his wife is to say that it was a gift. Love and affection is ordinarily a sufficient consideration to support a contract as between the parties, but is not such a consideration as to make Corrine Richards an innocent purchaser for value, and will be of no avail as against plaintiff's rights. Pursuing the theory of constructive trust, should the trustee be permitted to give to his wife an interest in the trust estate, and assist her to acquire a profit out of it, so as to relieve himself of liability, and should one occupying such a close relation as wife to the trustee be permitted to receive and retain benefits so obtained where no valuable consideration was paid therefor? Equity would fall short of its purpose to permit either to escape liability. The record does not show what value the land had for oil and gas purposes in December, 1919, but it is reasonable to assume that it had some value if not the value for which the lease sold a little more than six months later.

In the case of United States v. Dunn and Gillam, 268 U. S. 121, an action was brought to cancel an oil and gas lease obtained on a minor's land by fraudulent means, and for an accounting for the proceeds from subsequent transfers of interests in such lease. It was there held that the grantees of the fraudulently acquired lease became trustees of the lease, and, as such, were bound in equity to hold the lease for the benefit of the true owner of the land, or, in the event of a sale or other disposition, to hold its proceeds on a like obligation. It was further stated that the beneficiary of the trust may follow the trust property fraudulently diverted until it reaches the hands of an innocent purchaser for value, or, at his option, may claim the proceeds of the sale or other disposition of the trust property. The court summed up its holding in this language:

"We hold that Dunn and Gillam were constructive trustees of whatever interest they acquired in the Thomas lease, and of the proceeds derived from the transfer thereof to the Bull Head Oil Company, whatever its form, whether stock or money, and that they and all defendants claiming under them, other than innocent purchasers for value, may in equity be compelled to account to the plaintiff for such proceeds, for the benefit of the minor."

If Dunn and Gillam, and all defendants claiming under them, other than purchasers for value, may in equity be compelled to account, certainly there is no escape for either Richards or his wife, she not being a purchaser for value.

We hold that the judgment of the trial court was in no particular against the clear weight of the evidence; that the action was properly treated as one in equity; that C. W. Richards was a constructive trustee of plaintiff's land, and of the proceeds from the sale of oil and gas leases given upon the land; and that he and Corrine Richards may in equity be compelled to account to plaintiff for such proceeds in the manner directed by the trial court. The judgment of the trial court is affirmed.

BENNETT, HERR, DIFFENDAFFER, and HALL, Commissioners, concur.

By the Court: It is so ordered.

Note.—See "Trustees," 39 Cyc. p. 175, n. 34; p. 558, n. 17; p. 616, n. 27; p. 641, n. 89; p. 643, n. 98.