Carolyn Skelly BURFORD, Plain-
tiff in Error,

v.

Harold C. STUART, Defendant in Error.

No. 41680.

Supreme Court of Oklahoma.

Jan. 6, 1967.

V. P. Crowe, Val R. Miller, Crowe, Boxley, Dunlevy, Thweatt, Swinford & Johnson, Oklahoma City, for plaintiff in error.

E. J. Doerner, R. Dobie Langenkamp, Doerner, Stuart, Moreland, Saunders & Daniel, Tulsa, for defendant in error.

DAVISON, Justice.

The parties occupy the same relative positions in this court that they had in the lower court and will be referred to by their trial court designation of "plaintiff" and "defendant."

Plaintiff's action against defendant was brought to establish plaintiff's ownership in mineral interests held by defendant in his name, to require defendant to convey such mineral interests to plaintiff, and to require defendant to render an accounting.

The record reflects that in 1947 the defendant acquired and owned certain oil and gas mineral interests and in that year the defendant and Gertrude Frank Skelly (herein referred to as Mrs. Skelly) made an oral agreement by which Mrs. Skelly acquired a one half interest in such minerals, with the understanding that the title and management thereof would remain in defendant. This joint venture was called S & S Royalty. Mrs. Skelly died in 1959, leaving plaintiff and another daughter (Mrs. Harold C. Stuart, wife of defendant) as her sole heirs. During the probate of Mrs. Skelly's estate in the County Court of Tulsa County from 1959 to rendition of the final decree of distribution on July 10, 1964, the defendant made regular annual reports to the co-executors of the estate concerning his management and the income of S & S Royalty. The probate decree awarded to plaintiff a one half interest in Mrs. Skelly's one half interest in the minerals.

On August 6, 1964, plaintiff filed the present above described action against defendant as to certain specified mineral interests and as to any other mineral interests that, unknown to plaintiff, were in fact held by defendant under the 1947 arrangement for Mrs. Skelly, and in which plaintiff would have an interest. Thereafter, and on or about August 11, 1964, the defendant assigned to plaintiff the interest claimed by plaintiff in the specified minerals and paid to plaintiff the income or profit from such minerals.

Defendant's answer and cross petition (filed December 23, 1964) admitted the 1947 arrangement with Mrs. Skelly and alleged full and complete accounting with Mrs. Skelly to the time of her death (1959), and complete annual accounting to the executors of her estate during the 5 year probate period, and that the matter of the minerals so held by defendant had been made the subject of an extensive inquiry in proceedings instituted by plaintiff in the probate proceedings and a full disclosure had been made by defendant therein. Defendant's cross petition asked for reformation of one of the mineral assignments given by defendant to plaintiff, supra.

The case was set for trial on February 17, 1965.

On February 16, 1965, plaintiff filed a motion to strike the cause from trial and for a pre-trial hearing, and requesting that defendant be required to produce all records of S & S Royalty. On the same date plaintiff filed her reply and answer in which, inter alia, she admitted receipt of the above described mineral assignments and sums given her by defendant. The court minute on the hearing for continuance recites "Pre-trial held and case stricken" and re-set the trial for March 25, 1965.

On March 25, 1965, the court again continued the trial on motion of plaintiff and passed the case to April 27, 1965.

When the case come on for trial on April 27, 1965, the plaintiff filed an application for a further continuance alleging that she had by means of depositions of defendant

and other witnesses, taken March 12, 19 and 24, procured copies of what defendant claimed to be all records in his possession or within his knowledge relating to the subject of the action, including records of oil runs from January, 1958, through 1964. The records had been forwarded to St. Louis where plaintiff and her accountants, were checking their correctness. Counsel for plaintiff advised the court as follows:

"* * * Now, when you granted this last continuance, you admonished me, I believe it was at that time, to be in a position to state to the court whether or not we have discovered any income, or funds, or properties for which Mr. Stuart has not accounted. I say to your Honor that, from the records kept by the bookkeeper for Mrs. Skelly, and from the records kept by Mr. Stuart or kept under his supervision by a bookkeeper, or somebody employed by him, but we do not discover in those records any property, that he has not listed, nor any money, or income that he has not reported. * * *

* * * * * *

"* * * Now then, she (plaintiff) is in the process of attempting to verify the correctness of the records that we have examined, by inquiries from oil companies and others who might have or either took runs, or either had some knowledge of them. It has been a little difficult to tell from what Mr. Stuart says what is S & S Trust properties, and what is not. She wants to complete that check, your Honor and I will say to you, your Honor, I do not think that this case is unduly old. * * *

"* * * that when Mr. Miller and I went and made an examination of what Mr. Stuart showed us, in accordance with what the court said for us to do, we were not able to get the accountant here from Saint Louis to check them, and consequently we took depositions and sent copies to St. Louis where the accountant did check them, and he told me as far Mrs. Skelly's, Mrs. Stuart's and Mr.

Stuart's records and those oil run statements were concerned, that he has not found any discrepancies in the known properties involved in this S & S Royalty Trust. * * *"

It was defendant's position that he had made full disclosure of all interests and income of S & S Royalty. Defendant's counsel advised the court regarding an earlier examination by an accounting firm employed by plaintiff as follows:

"* * * They came up in 1960 and '61, and had a crew of men up here about eight months, or maybe longer, at which time they went over everything connected with Mrs. Skelly's estate, Mr. Skelly's estate, and including the S & S Royalty, and Mr. Trotter reported that his examination revealed no discrepancies. * * *"

Defendant was present in person and it appears that he had with him the records of S & S Royalty.

The trial court denied a continuance and directed the parties to proceed with the trial. Plaintiff's attorney stated he had no testimony to offer and the court dismissed plaintiff's petition for failure to prosecute. Defendant then offered evidence in support of his cross petition. The court rendered judgment for defendant on all issues raised by the cross petition and ordered the particular mineral deed reformed.

In the journal entry of judgment the trial court reviewed the circumstances of the various continuances granted the plaintiff, and as to the first continuance granted on February 17, 1965, stated:

"* * * and the defendant appearing in court in person and by his attorney E. J. Doerner, announced ready for trial, and having present in Court the books, records and documents pertaining to the S & S Royalties, and that the Court on said date continued said trial until March 25, 1965, and the plaintiff's attorneys stated that they would in the interim have said books and records checked and audited by accountants of her selection; and

"It further appearing that the books, records and documents pertaining to the S & S Royalties were made in the interim available to plaintiff and her attorneys who examined the same, and * * *"

Plaintiff presents the two part proposition that the court erred in failing to require the defendant to make a full and complete accounting as a trustee and that the court was guilty of an abuse of discretion in denying plaintiff's application for a continuance. The two contentions are closely interwoven because it appears to be plaintiff's argument that the refusal of the continuance deprived plaintiff of a full accounting by the defendant.

■ Plaintiff contends the defendant trustee was required to render a full accounting to his beneficiary; that a trustee is bound to keep clear, distinct and accurate accounts; and that trustees generally are held to the strictest accountability to their beneficiaries. Citing Finley v. Exchange Trust Co., 183 Okl. 167, 80 P.2d 296, 117 A.L.R. 162, and Richards v. Lowery, 135 Okl. 243, 275 P. 335, 337. We will concede that such is the law and for this reason we have described at some length the present circumstances. The record reflects that plaintiff learned of the subject mineral interests in connection with the lengthy probate of the estate of Mrs. Skelly and made them the subject of expert investigation in proceedings in that probate; that with this knowledge she instituted the present action and commenced her own investigation of the records of the defendant; that defendant assigned and paid to plaintiff the minerals and income due her as reflected by defendant's records; that the court had granted several continuances to enable plaintiff to pursue her investigation; and that admittedly the plaintiff could find no discrepancies in defendant's records. The plaintiff chose her own method and procedure for acquiring disclosure and accounting by the defendant. It is obvious the lower court concluded that under the circumstances plaintiff had been given sufficient time to reasonably explore all sources of information to show error or discrepancy in defendant's records and accounts.

■ The present situation is similar in some respects to that presented in Bryan v. Seiffert, 185 Okl. 496, 94 P.2d 526. There, as here, the trust arrangement had been made many years before, and an heir was seeking an accounting, and the trustee had rendered annual accounts and was present at the trial with his records. In the cited case the trustee had exhibited his accounts to persons upon application and there was no evidence that information had been withheld or denied. In the present case the plaintiff has, by the procedure adopted by her, acquired full knowledge of the defendant's records and found no discrepancy in them. In the cited case it was complained that the court erred in refusing to order an accounting and we stated:

"The heirs of a deceased owner of a share in a trust estate may demand an accounting from the trustee of such estate, but such relief should not be granted if full disclosure has been made and adequate inspection and explanation offered and where it is not shown that a definite or useful purpose will be served."

It is our conclusion that this contention of the plaintiff is without merit.

Plaintiff argues that the trial court was arbitrary and abused its discretion in refusing to grant her a continuance in the above described situation.

■ The plaintiff had been granted two prior continuances. Our prior statements and discussion effectively dispose of any contention that the trial court abused its discretion in denying plaintiff a further continuance.

■ In Hall v. Hall, Okl., 390 P.2d 509, we stated:

"The granting or refusing of a continuance is a matter of discretion with the trial court, and, unless it appears that such discretion was abused to the prejudice of the substantial rights of a litigant,

the action of the court will not be disturbed upon appeal."

It is our opinion that the trial court did not abuse its discretion in refusing to grant a third continuance.

Affirmed.

JACKSON, V. C. J., and WILLIAMS, BLACKBIRD, IRWIN, BERRY, HODGES and LAVENDER, JJ., concur.