Argued February 6, reversed and remanded March 18, 1976

# JIMENEZ, *Appellant,*
*v.*
# LEE, *Respondent.*

547 P2d 126

*Alberta Heffron,* Salem, argued the cause and filed briefs for appellant.

*Charles W. Creighton,* Salem, argued the cause and filed a brief for respondent.

O'CONNELL, C. J.

## O'CONNELL, C. J.

This is a suit brought by plaintiff against her father to compel him to account for assets which she alleges were held by defendant as trustee for her. Plaintiff appeals from a decree dismissing her complaint.

Plaintiff's claim against her father is based upon the theory that a trust arose in her favor when two separate gifts were made for her benefit. The first of these gifts was made in 1945, shortly after plaintiff's birth, when her paternal grandmother purchased a $1,000 face value U. S. Savings Bond which was registered in the names of defendant "and/or" plaintiff "and/or" Dorothy Lee, plaintiff's mother. It is uncontradicted that the bond was purchased to provide funds to be used for plaintiff's educational needs. A second gift in the amount of $500 was made in 1956 by Mrs. Adolph Diercks, one of defendant's clients. At the same time Mrs. Diercks made identical gifts for the benefit of defendant's two other children. The $1,500 was deposited by the donor in a savings account in the names of defendant and his three children.

In 1960 defendant cashed the savings bond and invested the proceeds in common stock of the Commercial Bank of Salem, Oregon. Ownership of the shares was registered as "Jason Lee, Custodian under the Laws of Oregon for Betsy Lee [plaintiff]." At the same time, the joint savings account containing the client's gifts to defendant's children was closed and $1,000 of the proceeds invested in Commercial Bank stock.[1] Defendant also took title to this stock as "custodian" for his children.

The trial court found that defendant did not hold either the savings bond or the savings account in trust

---

[1] The specific disposition of the balance of this account is not revealed in the record. Defendant testified that the portion of the gift not invested in the stock "was used for other unusual needs of the children." Defendant could not recall exactly how the money was used but thought some of it was spent for family vacations to Victoria, British Columbia and to satisfy his children's expensive taste in clothing.

for the benefit of plaintiff and that defendant held the shares of the Commercial Bank stock as custodian for plaintiff uder the Uniform Gift to Minors Act (ORS 126.805 — 126.880). Plaintiff contends that the gifts for her educational needs created trusts in each instance and that the trusts survived defendant's investment of the trust assets in the Commercial Bank stock.

■ It is undisputed that the gifts were made for the educational needs of plaintiff. The respective donors did not expressly direct defendant to hold the subject matter of the gift "in trust" but this is not essential to create a trust relationship.[2] It is enough if the transfer of the property is made with the intent to vest the beneficial ownership in a third person. That was clearly shown in the present case. Even defendant's own testimony establishes such intent. When he was asked whether there was a stated purpose for the gift, he replied:

> "* * * Mother said that she felt that the children should all be treated equally and that she was going to supply a bond to help with Elizabeth's educational needs and that she was naming me and Dorothy, the ex-wife and mother of Elizabeth, to use the funds as may be most conducive to the educational needs of Elizabeth."

Defendant also admitted that the gift from Mrs. Diercks was "for the educational needs of the children." There was nothing about either of the gifts which would suggest that the beneficial ownership of the subject matter of the gift was to vest in defendant to use as he pleased with an obligation only to pay out of his own funds a similar amount for plaintiff's educational needs.[3]

■ Defendant himself demonstrated that he knew that the savings bond was held by him in trust. In a letter to his mother, the donor, he wrote: "Dave and Bitsie [plaintiff] & Dorothy are aware of the fact that I hold $1,000 each for Dave & Bitsie in trust for them on

---

[2] *Allen v. Hendrick,* 104 Or 202, 206 P 733 (1922).

[3] Cf., I Scott on Trusts § 12.2, p. 107 (3d ed 1967).

account of your E-Bond gifts." It is fair to indulge in the presumption that defendant, as a lawyer, used the word "trust" in the ordinary legal sense of that term.

Defendant further contends that even if the respective donors intended to create trusts, the doctrine of merger defeated that intent because plaintiff acquired both legal and equitable title when the savings bond was registered in her name along with her parents names and when Mrs. Diercks' gift was deposited in the savings account in the name of plaintiff and her father, brother and sister. The answer to this contention is found in II Scott on Trusts § 99.4, p. 811 (3d ed 1967):

> "A trust may be created in which the trustees are A and B and the sole beneficiary is A. In such a case it might be argued that there is automatically a partial extinguishment of the trust, and that A holds an undivided half interest at joint tenant free of trust, although B holds a similar interest in trust for A. The better view is, however, that there is no such partial merger, and that A and B will hold the property as joint tenants in trust for A. * * *"

Having decided that a trust was created for the benefit of plaintiff, it follows that defendant's purchase of the Commercial Bank stock as "custodian" for plaintiff under the Uniform Gift to Minors Act was ineffectual to expand defendant's powers over the trust property from that of trustee to that of custodian.[4]

---

[4] If defendant were "custodian" of the gifts, he would have the power under the Uniform Gift to Minors Act (ORS 126.820) to use the property "as he may deem advisable for the support, maintenance, education and general use and benefit of the minor, in such manner, at such time or times, and to such extent as the custodian in his absolute discretion may deem advisable and proper, without court order or without regard to the duty of any person to support the minor, and without regard to any other funds which may be applicable or available for the purpose." As custodian defendant would not be required to account for his stewardship of the funds unless a petition for accounting were filed in circuit court no later than two years after the end of plaintiff's minority. ORS 126.875. As the trustee of an educational trust, however, defendant has the power to use the trust

Defendant's attempt to broaden his powers over the trust estate by investing the trust funds as custodian violated his duty to the beneficiary "to administer the trust solely in the interest of the beneficiary." Restatement (Second) of Trusts § 170, p. 364 (1959).

The money from the savings bond and savings account are clearly traceable into the bank stock. Therefore, plaintiff was entitled to impose a constructive trust or an equitable lien upon the stock so acquired.[5] Plaintiff is also entitled to be credited for any dividends or increment in the value of that part of the stock representing plaintiff's proportional interest. Whether or not the assets of plaintiff's trust are traceable into a product, defendant is personally liable for that amount which would have accrued to plaintiff had there been no breach of trust.[6] Defendant is, of course, entitled to deduct the amount which he expended out of the trust estate for plaintiff's educational needs. However, before he is entitled to be credited for such expenditures, he has the duty as trustee to identify them specifically and prove that they were made for trust purposes. A trustee's duty to maintain and render accurate accounts is a strict one. This strict standard is described in Bogert on Trusts and Trustees § 962, pp. 10-13 (2d ed 1962):

"It is the duty of the trustee to keep full, accurate and orderly records of the status of the trust administration and of all acts thereunder. * * * 'The general rule of law applicable to a trustee burdens him with the duty of showing that the account which he renders and the expenditures which he claims to have been made were correct, just and necessary. * * * He is bound to keep clear and accurate accounts, and if he does not the presumptions are all against him, obscurities and doubts being resolved adversely to him.' [Quoting from *White v.*

funds for educational purposes only and has the duty to render clear and accurate accounts showing the funds have been used for trust purposes. See ORS 128.010; Restatement (Second) of Trusts § 172 (1959).

[5] Restatement (Second) of Trusts § 202(1), p. 444 (1959).

[6] *See* Restatement (Second) of Trusts § 208, p. 471 (1959).

*Rankin,* 46 NYS 228, 18 App Div 293, 294, affirmed without opinion 162 NY 622, 57 NE 1128 (1897).] * * * * * He has the burden of showing on the accounting how much principal and income he has received and from whom, how much disbursed and to whom, and what is on hand at the time."[7]

Defendant did not keep separate records of trust income and trust expenditures. He introduced into evidence a summary of various expenditures which he claimed were made for the benefit of plaintiff. It appears that the summary was prepared for the most part from cancelled checks gathered together for the purpose of defending the present suit. This obviously did not meet the requirement that a trustee "maintain records of his transactions so complete and accurate that he can show by them his faithfulness to his trust."[8]

In an even more general way defendant purported to account for the trust assets in a letter dated February 9, 1966, written to plaintiff shortly after her 21st birthday when she was in Europe where she had been receiving instruction and training in ballet. In that letter defendant revealed to plaintiff, apparently for the first time, that her grandmother had made a gift to her of a savings bond and that the proceeds of the bond had been invested in stock. Without revealing the name of the stock, defendant represented that it had doubled in value of the bond from $750 to $1,500. The letter went on to suggest that plaintiff allocate $1,000 to defray the cost of additional ballet classes and that the remaining $500 be held in reserve to defray expenses in returning to the United States and in getting settled in a college or in a ballet company.

Defendant's letter was in no sense a trust accounting. In the first place, it was incomplete; it made no

---

[7] See also, *Wood v. Honeyman,* 178 Or 484, 169 P2d 131 (1946); Restatement (Second) of Trusts § 172, p. 376 (1959); Bogert on Trusts and Trustees § § 961 through 963 (2d ed 1962).

[8] *Wood v. Honeyman,* 178 Or 484, 555-556, 169 P2d 131 (1946).

mention of Mrs. Diercks' gift. Moreover, it was inaccurate since it failed to reveal the true value attributable to the Commerical Bank stock. There was evidence which would put the value of plaintiff's interest in the stock at considerably more than $1,500.[9]

Defendant contends that even if a trust is found to exist and that the value of the trust assets is the amount claimed by plaintiff there is sufficient evidence to prove that the trust estate was exhausted by expenditures for legitimate trust purposes. Considering the character of the evidence presented by defendant, it is difficult to understand how such a result could be reached. As we noted above, the trust was for the educational needs of plaintiff. Some of the expenditures made by defendant would seem to fall clearly within the purposes of the trust. These would include the cost of ballet lessons, the cost of subscribing to a ballet magazine, and other items of expenditure related to plaintiff's education.[10] But many of the items defendant lists as trust expenditures are either questionable or clearly outside the purpose of an educational trust. For instance, defendant seeks credit against the trust for tickets to ballet performances on three different occasions while plaintiff was in high school. The cost of plaintiff's ticket to a ballet performance might be regarded as a part of plaintiff's educational program in learning the art of ballet, but defendant claims credit for expenditures made to purchase

---

[9]It appears that with the accumulation of cash and stock dividends the total value of plaintiff's interest at the time she received defendant's letter would amount to as much as $2,135. This figure is an approximation derived from the incomplete stock price information before us. It is important only to demonstrate that defendant did not render an adequate accounting. Our calculation does not include the value of plaintiff's interest in stock purchased with the proceeds of Mrs. Diercks' gift.

[10]Defendant's failure to keep proper records makes it difficult, if not impossible, to determine whether some of these expenditures were made from the trust estate or from defendant's own funds. Moreover, it is unclear in some instances whether the expenditure was for educational purposes or simply for recreation. Thus defendant charges plaintiff with expenses incurred in connection with a European tour taken by plaintiff. It is not disclosed as to whether this was to provide an educational experience for plaintiff or for some other purpose.

[ 464 ]

ballet tickets for himself and other members of the family, disbursements clearly beyond the purposes of the trust.

Other expenditures. claimed by defendant in his "accounting" are clearly not in furtherance of the purposes of the trust. Included in the cancelled checks introduced into evidence in support of defendant's claimed offset against the trust assets were: (1) checks made by defendant in payment of numerous medical bills dating from the time plaintiff was 15 years old (these were obligations which a parent owes to his minor children); (2) checks containing the notation "Happy Birthday" which plaintiff received from her parents on her 17th, 18th and 22nd birthdays; (3) a 1963 check with a notation "Honor Roll, Congratulations, Mom and Dad" (4) defendant's check to a clothier which contains the notation "Betsy's Slacks and Sweater, Pat's Sweater, Dot's Sweater" (defendant attempted to charge the entire amount against the trust); (5) defendant's check to a Canadian Rotary Club for a meeting attended when he joined plaintiff in Banff after a summer ballet program; (6) $60 sent to plaintiff to enable her to travel from France, where she was studying ballet, to Austria to help care for her sister's newborn babies. There were also other items improperly claimed as expenditures for plaintiff's educational benefit, either because the purpose of the outlay could not be identified or because defendant claimed a double credit.[11]

It is apparent from the foregoing description of defendant's evidence that the trial court erred in finding that "Plaintiff in these proceedings has received the accounting which she sought and * * * is entitled to no further accounting." The trial court also erred in finding that "Defendant did not hold in trust for the benefit of Plaintiff" the product traceable to the two gifts.

The case must, therefore, be remanded for an

[11]The double counting occurs where defendant claims credit for cashier's checks sent to plaintiff while she was staying in Europe and at the same time also claims credit for his personal checks used to purchase the cashier's checks.

accounting to be predicated upon a trustee's duty to account, and the trustee's burden to prove that the expenditures were made for trust purposes. There is a moral obligation and in proper cases a legal obligation for a parent to furnish his child with higher education.[12] Where a parent is a trustee of an educational trust, as in the present case, and he makes expenditures out of his own funds, his intent on one hand may be to discharge his moral or legal obligation to educate his child or on the other hand to follow the directions of the trust.[13] It is a question of fact in each case as to which of these two purposes the parent-trustee had in mind at the time of making the expenditures.[14] In determining whether defendant has met this strict burden of proof, the trial court must adhere to the rule that all doubts are resolved against a trustee who maintains an inadequate accounting system.

The decree of the trial court is reversed and the cause is remanded for further proceedings consistent with this opinion.

[12] *Jackman v. Short,* 165 Or 626, 109 P2d 860, 133 ALR 887 (1941).

[13] The rule stated by Bogert indicates why defendant's intent is important:

"The trustee is entitled to be credited on the accounting with all sums paid or property transferred by him from trust funds, and with sums advanced by him from his own funds, when such payments or transfers were in the exercise of powers expressly or impliedly granted to him by the trust instrument, or powers given him by statute or court orders, or reasonably incidental to the exercise of such powers." Bogert on Trusts and Trustees § 972(1) (2d ed 1962)., pp. 218-220.

If defendant made expenditures out of his own funds intending to discharge his obligation to educate his child, the payments were not "sums advanced by him from his own funds * * * in the exercise of [trust] powers." Such expenditures would be in his capacity as plaintiff's father and not as trustee.

[14] There is evidence that defendant considered expenditures made prior to February 9, 1966 (the date of defendant's letter to plaintiff which we previously described) as not being for trust purposes because at that date he regarded the proceeds from the savings bond still intact. The letter read:

"I believe that it would be fair and realistic that I should henceforth offset against this $1500 such further funds as you may need to continue with your ballet instruction, or to travel to New York or elsewhere to commence your ballet career on an independent, self-supporting basis.

"The situation is comparable to that of the mother bird that finally nudges the baby out of the nest so that it, too, may learn to fly."