REVENUE AND TAXATION
In view of the amendment of 68 O.S. 1310 [68-1310] (1971), by House Bill 1009 of the First Session of the Thirty-sixth Legislature, declaring that sales tax receipts are "held in trust for the State of Oklahoma," the collecting vendor cannot retain any investment or interest income earned by the use of such sales tax receipts while in the custody of such collecting vendor, but rather such investment or interest income inures and is payable to the State of Oklahoma, and upon payment is required to be apportioned in the manner prescribed in 68 O.S. 1303 [68-1303] (1976), between the State Assistance Fund and the General Fund. Whether or not a collecting vendor of a local sales tax can retain any investment or interest income earned by the use of such local sales tax receipts while in the custody of such collecting vendor depends upon the local ordinances of any given political subdivision, and in the event any such ordinance creates a trust relationship pertaining to local sales tax receipts like that created for State sales tax receipts by 68 O.S. 1310 [68-1310] (1971), as amended by House Bill 1009 of the First Session of the Thirty-sixth Legislature, the apportionment of any investment or interest income earned by use of any local sales tax receipts while in the custody of the collecting vendor would likewise depend upon the apportionment provisions of any applicable local ordinances. The Attorney General has considered your request for an opinion wherein you ask, in effect, the following questions: (1) In view of the recent amendment to 68 O.S. 1310 [68-1310] (1971), by House Bill 1009 of the Thirty-sixth Oklahoma Legislature declaring sales tax receipts to be held in trust for the State of Oklahoma, can the collecting agent retain any investment or interest income earned by the use of such sales tax receipts while in his custody or does such investment or interest income inure to the benefit of the State? (2) If the investment or interest income referred to in question one inures to the benefit of the State, is such investment or interest income to be deposited in the State General Fund or to be allocated to the agency of state government or political subdivision who receives the sales tax revenues ? As mentioned in your request letter, Attorney General's Opinion No. 77-149, rendered prior to the amendment of 68 O.S. 1310 [68-1310] (1971), by House Bill 1009 of the First Session of the Thirty-sixth Legislature, held that in the absence of specific legislation creating a trust or fiduciary agency relationship with regard to money collected or withheld for the payment of sales taxes, a vendor collecting sales tax had no duty to remit to the State any investment or interest income generated by or derived from the sales tax receipts during the time such receipts are in the vendor's custody. The subsequent amendment to 68 O.S. 1310 [68-1310] added a new Subsection (d), which reads as follows: "(d) Any sum or sums collected or required to be collected in accordance with the provisions of Section 1304 of this title shall be deemed to be held in trust for the State of Oklahoma . . . ." (Emphasis added) As pointed out in previous Attorney General's Opinion No. 77-149, under 68 O.S. 1311 [68-1311] (1971), a vendor has the duty at the time of transmitting the sales tax return to remit to the Oklahoma Tax Commission ninety-seven percent (97%) of the tax due and is allowed to retain three percent (3%) of the tax due as compensation for keeping sales tax records, filing reports and remitting the tax when due as required by law. Of course, the recent amendment adding the new Subsection (d) to 68 O.S. 1310 [68-1310] is a later legislative enactment, and these two Sections must be read together to give force and effect to each. From a plain reading of the pertinent portion of Subsection (d) of 68 O.S. 1310 [68-1310], quoted above, it is evident that a trust relationship is established by law between the vendor collecting the sales tax and the State of Oklahoma. According to 76 Am.Jur. 2d Trusts 315, at page 534: "A trustee must act in good faith in the administration of the trust, and this requirement means that he must act honestly and with finest and undivided loyalty to the trust, not merely with that standard of honor required of men dealing at arm's length in the workaday world, but with a punctilio of honor the most sensitive . . . ." 76 Am.Jur.2d Trusts, 318, at pages 537 and 538, goes on to provide as follows: "A trustee is at all times disabled from obtaining any personal benefit, advantage, gain, or profit out of his administration of the trust, his dealing with the trust property, or his relation to the trust estate, in the absence at least of any express consent of the cestui que trust. Nothing in the law of fiduciary trusts is better settled than that the trustee shall not be allowed to advantage himself in dealings with the trust estate . . . Any benefit or profit obtained by the trustee inures to the trust estate, even though no injury was intended and none was in fact done to the trust estate." (Emphasis added) Concerning accounting by a trustee, 76 Am.Jur.2d Trusts, 505, at pages 725 and 726, provides as follows: "It is a strict duty of a trustee to keep and render a full and accurate record and accounting of his trusteeship to the cestui que trust, and the duty is strictly enforced by the courts." Further, concerning income and interest arising from the trust estate, 76 Am.Jur.2d Trusts, 511, at pages 730 and 731, provides as follows: "A trustee is bound to account for income to the trust estate, but he is not chargeable with income never paid to him through no fault on his part . . . . ". . . "Trustees must account for interest received on loans of trust funds . . . He must also account for interest on trust property or funds that he has wrongfully converted . . . ." (Emphasis added) In Richards v. Lowery,135 Okl. 243, 275 P. 335 (1929), it was held that equity will compel a trustee to account for all profits and pecuniary gain acquired by him out of, or by reason of, the trust estate, or the trust relation. It would, therefore, follow that any investment or interest income derived from sales tax receipts collected pursuant to 68 O.S. 1304 [68-1304] (1971), i.e. State sales taxes, would inure to the benefit of the State of Oklahoma and be payable to the State along with the sales tax receipts. Concerning your second question, as to the sales tax levied by 68 O.S. 1304 [68-1304] (1971), i.e. State sales taxes, the revenues derived from such levy are apportioned in accordance with 68 O.S. 1303 [68-1303] (1976), which requires such revenues to be placed to the credit of the State Assistance Fund, except that three and one-half percent (3 1/2%) of such revenues on a monthly basis are to be transferred by the Oklahoma Tax Commission to the General Revenue Fund of the State Treasury. In view of the fact that this Section covers the apportionment of "revenues derived hereunder," the investment or interest income arising from sales tax receipts while in the custody of the vendor would be apportioned after being paid to the State of Oklahoma in the manner prescribed in 68 O.S 1303 as "revenues derived hereunder." Concerning any local sales tax levied and collected by a political subdivision, the question of whether or not investment or interest income derived from such tax receipts while in the custody of the vendor inure to the benefit of the political subdivision is not controlled by the language of 68 O.S. 1310 [68-1310](d) since that Section is applicable only to sales tax levies under 68 O.S. 1304 [68-1304], i.e. State sales taxes; but rather would be controlled by any applicable local ordinances of the political subdivision. Further, if any applicable ordinances of a political subdivision impose the same trust character on local sales tax receipts as that imposed at the State level by the recent amendment to 68 O.S. 1310 [68-1310], the apportionment of such local sales tax receipts, including any investment or interest income arising therefrom while in the custody of the vendor, would likewise be determined according to any applicable local ordinance. It is, therefore, the opinion of the Attorney General that your questions be answered as follows. In view of the amendment of 68 O.S. 1310 [68-1310] (1971), by House Bill 1009 of the First Session of the Thirty-sixth Legislature, declaring that sales tax receipts are "held in trust for the State of Oklahoma," the collecting vendor cannot retain any investment or interest income earned by the use of such sales tax receipts while in the custody of such collecting vendor, but rather such investment or interest income inures and is payable to the State of Oklahoma, and upon payment is required to be apportioned in the manner prescribed in 68 O.S. 1303 [68-1303] (1976), between the State Assistance Fund and the General Fund. Whether or not a collecting vendor of a local sales tax can retain any investment or interest income earned by the use of such local sales tax receipts while in the custody of such collecting vendor, depends upon the local ordinances of any given political subdivision, and in the event any such ordinance creates a trust relationship pertaining to local sales tax receipts like that created for State sales tax receipts by 68 O.S. 1310 [68-1310] (1971) as amended by House Bill 1009 of the First Session of the Thirty-sixth Legislature, the apportionment of any investment or interest income earned by use of any local sales tax receipts while in the custody of the collecting vendor would likewise depend upon the apportionment provisions of any applicable local ordinances. (GERALD E. WEIS)