710 P.2d 597

**In the Matter of the TRUST OF Archie A. GROVER, deceased.**

**Joe GROVER, Dan Grover, Kay Calzada, Dean Grover, Roger Kim Grover and Joanne Stosich, Appellants,**

v.

**Sam GROVER, Respondent.**

No. 15734.

Supreme Court of Idaho.

Dec. 2, 1985.

R.M. Whittier, Pocatello, for appellants.

Stephen McGrath, Idaho Falls, for respondent.

PER CURIAM.

This controversy revolves around a testamentary trust established by Archie Grover which became effective upon his death in 1957. In his will, Archie Grover deeded an 1800-acre tract to his son, Sam Grover, in trust for the use and benefit of Sam Grover's children, who would eventually number eleven.

The trust was to terminate when the youngest of Sam Grover's children reached the age of 21, which happened in 1982, 25 years after the trust was created. The trust agreement declared that upon termination of the trust, the trust property was to be turned over to the children for them to hold together as tenants in common. The trust agreement was silent with respect to Grover's compensation for services as trustee, and also did not deal with such things as Grover's use of his own equipment on the trust property.

Throughout the duration of the trust, Grover conducted all business affairs with the use of a single bank checking account. Into that account he deposited all of his income, including that properly attributable to the trust estate. From that account as well, he paid all of his expenses, including those properly attributable to the trust estate. It appears that during the life of the trust he had no legal assistance, no bookkeeping assistance, and rendered no accountings, although at one point in time he did request an order of the court granting him authority to hire an accountant. This

request, however, was denied. That he did not comply with requirements of trustee law is not in dispute. Nor does it appear that he knew of any such requirements. In short, he took possession of the trust property and operated it much as would be proper had he been vested with a term for years. The children during their minority lived with him, and aided him. Those children who attained majority while the trust was still active made no demands upon him for any accountings, and were apparently equally ignorant of the law, or simply acquiesced in his management of the trust.

In 1979 Grover's children petitioned the magistrate court for permission to sell the trust property. They acknowledged that the youngest Grover child was only 18 years old, but contended that their father, due to advancing age, was becoming unable to adequately manage the property. The court granted their request. Soon thereafter, Grover requested compensation for the years of service he had rendered as trustee. On September 28, 1979, Grover and his children entered into an agreement whereby upon distribution of the trust property, Grover would be given a $\frac{1}{11}$ share of the money received from the sale. The children ultimately decided not to sell the property, and Grover was never compensated.

On February 23, 1983, Grover asked the magistrate court to distribute the trust estate, terminate the trust, and discharge him as trustee. The children simultaneously asked the court to distribute the property and order an accounting. Hearings were held and, ultimately, the ranch properties were deeded to the children in accordance with the provisions of the trust. The court upheld the September 28, 1978 agreement between Grover and his children regarding compensation for his services as trustee. Finally, the court held that even though Grover kept incomplete business records in his position as trustee, all trust funds were properly used and the faulty record keeping was not done to defraud the beneficiaries. Four of the children appealed to the district court, which affirmed the magistrate court's decision.

The district judge did not opt to have a trial de novo. Instead, acting as an appellate court, additional testimony was taken on the single issue of the reasonable value of Grover's twenty-five years of service as trustee. The district court, on a *quantum meruit* basis, declared the service to be worth $261,000. This holding essentially mooted for the district court the issue of Grover's failure to keep proper records. The court reasoned that where Grover was only asserting a $\frac{1}{11}$ share of the trust property as compensation for services as trustee pursuant to the September 28, 1978 agreement—the share being valued at $31,-818.18—he is already receiving $230,000 less than what he is entitled to receive. Therefore, according to the district court, the failure to maintain proper records harmed, if anyone, only Grover. The court also noted that Grover's incomplete record keeping was not the result of ill-tempered ways and did not harm the trust:

2. Did the trustee breach his duty of trust including the failure to render a full account of trusteeship?

The Court feels that this question should ask whether the trustee breached his duty to the detriment of the trust estate. There is no evidence that the trustee ever took a vacation, bought fancy clothes or a fancy car, made poor investments, gambled or chased women. For the first 20 years of the trust, the trust income was quite meager. All indications from the evidence is that the large family lived frugally with a lot of hard work. Sam Grover was no doubt a calloused individual not prone to giving credit for the hard work performed by other family members. His faults might be enumerated in a long list, but the Court cannot find evidence that the trust estate was cheated. He is obviously guilty of keeping poor records, but the poor record keeping has not served as any type of vehicle to hide or obscure a loss of any consequence.

Six children now appeal to this Court. They raise three issues: (1) whether the

September 28, 1979 agreement between Grover and his children regarding compensation for his services as trustee is valid; (2) whether Grover's accounting substantially complies with his duty as trustee to provide such an accounting upon termination of the trust; and (3) whether the trust estate is properly chargeable for the reasonable legal expenses incurred by Grover as trustee.

## I.

■ The children's first argument is essentially one attacking the sufficiency of the evidence. The children argue that their father's $\frac{1}{11}$ share was to only come into being if, in fact, the property was sold. Such an argument is unpersuasive.

The agreement is clear and unambiguous. It makes no reference whatsoever to any sale as a condition precedent to Grover's receiving remuneration for his services as trustee. It reads as follows:

THIS AGREEMENT made this 28 day of September, 1979, by and between SAMUEL B. GROVER, Trustee of the ARCHIE A. GROVER trust, hereinafter referred to as "party of the first part" and JOHN BERNARD GROVER, KAY CULZADA, SAMUEL DEAN GROVER, DANIEL GROVER, JOSEPH GROVER, JOANN STOSICH, KATHLEEN GROVER, SHERRIE LAND, and ROGER KIM GROVER, all beneficiaries under the ARCHIE A. GROVER TRUST hereinafter referred to as "party of the second part".

WHEREAS the party of the first part has acted as trustee of the ARCHIE A. GROVER TRUST estate for the last several years and served in that position without any compensation whatsoever;

AND WHEREAS the party of the first part has diligently performed the services as trustee and has managed and maintained the trust estate adequately and put much time and effort into performing the services as trustee;

AND WHEREAS it has now been determined by all parties that the trust property is to be sold and divided and the trust dissolved;

AND WHEREAS the party of the second part feel that the party of the first should receive some compensation for all his efforts, time, and work performed as trustee of the estate;

In consideration of the dedication the party of the first part has displayed as trustee under the ARCHIE A. GROVER TRUST and in lieu of any reimbursement, wages or compensation whatsoever for such services;

IT IS HEREBY MUTUALLY AGREED by both parties hereto that at the time of distribution of the trust funds to all beneficiaries after deducting all just debt and expenses, that the party of the first part shall receive a $\frac{1}{11}$ share of the net distribution of the trust monies which will be equal to the same distribution that is made to all beneficiaries under said trust except those which have purchased the interest of CAROL JEAN MOSS whom shall receive the extra share in the specific amounts they purchased.

Accordingly, we affirm Grover's right to his share of the property under the agreement in issue.

## II.A.

It is indisputable that Grover miserably performed his duty as a trustee in being unable to render any accounting. Case law is legion in declaring that a trustee has a duty to keep adequate records of his transactions. *See, e.g., Jimenez v. Lee,* 274 Or. 457, 547 P.2d 126 (1976); *Blackmon v. Hale,* 1 Cal.3d 548, 463 P.2d 418, 83 Cal. Rptr. 194 (1970); *Burford v. Stuart,* 422 P.2d 428 (Okla.1967); *Barnett v. Hitching Post Lodge, Inc.,* 101 Ariz. 488, 421 P.2d 507 (1966); *Walker v. Walker,* 17 Utah 2d 53, 404 P.2d 253 (1965); G.G. Bogert and G.T. Bogert, *Handbook of the Law of Trusts* § 140 (West 1973).

The question we answer, however, is whether this breach is such that the district court erred in ruling that Grover should not be denied compensation on the basis of

the aforementioned agreement. Our answer is guided by the following:

> The matter of compensation of the trustee and his attorney rests largely in the discretion of the trial court. The rule is well stated in the case of *Booth v. Bradford*, 114 Iowa, 562, 87 N.W. 685, 688, wherein Justice Deemer, speaking for the court, said: "Generally speaking, a trustee who neglects his duties, who is guilty of bad faith, or who violates his obligations, forfeits his right to compensation and to interest. [Citing cases.] But this is not an inflexible rule. *If the irregularities complained of are trivial or have done no harm, compensation may be allowed. Myers' Appeal*, 62 Pa. 104. *And the allowance of compensation in any case rests in the sound discretion of the court.* [Citing cases.] Each case must be determined largely on its own peculiar facts, due weight being given by the appellate court to the findings of the lower tribunal. *If we were satisfied that defendant was guilty of actual fraud or that he was guilty of intentional bad faith, no compensation for services or interest allowance would be made.* But we are not so satisfied." *Turner v. Ryan*, 223 Iowa 191, 272 N.W. 60, 66 (1937) (emphasis added).

*See also Cloud v. U.S. National Bank of Oregon*, 280 Or. 83, 570 P.2d 350, 357 (1977). Comment C of the Restatement (Second) of Trusts, § 243, agrees with this and reads as follows:

> *It is within the discretion of the court whether the trustee who has committed a breach of trust shall receive full compensation or whether his compensation shall be reduced or denied.* In the exercise of the court's discretion the following factors are considered: (1) whether the trustee acted in good faith or not; (2) whether the breach of trust was intentional or negligent or without fault; (3) whether the breach of trust related to the management of the whole trust or related only to a part of the trust property; (4) whether or not the breach of trust occasioned any loss and whether if there has been a loss it has been made good by the trustee; (5) whether the trustee's services were of value to the trust.

### B.

In light of the highly unusual factual posture of this case, we are not persuaded that both the magistrate and district courts abused their discretion in upholding Grover's compensation in the form of a 1/11 share of the trust property.

We note that Grover's failure to keep detailed records is not as egregious as where the trustee is a stranger. As the Oregon Supreme Court stated: "[W]hen ... a trust is a 'family affair,' a trustee may be justified in the belief that he will not be required for this purpose to maintain records as complete as if he were acting for strangers." *Gorger v. Gorger*, 276 Or. 267, 555 P.2d 1, 15 (1976). This does *not* mean, however, that a "family" trustee can fail to keep records and automatically expect to receive full compensation and avoid penalties where the facts of the case demand otherwise. But it does mean that the seriousness or weight of the failure is not as significant as in other cases, especially when the facts do not reveal, as they do not here, that the failure materially harmed the trust estate. Accordingly, based upon the record, we hold that the courts below did not err in the view that Grover's inadequate record keeping was not of such a nature as to require the denial of compensation.

### III.

The magistrate and district court awarded Grover attorney's fees. The basis was I.C. § 68–106(c)(24) and (25). Those two subsections read that a trustee has the authority:

> (24) to employ persons, including attorneys, auditors, investment advisors, or

agents, even if they are associated with the trustee, to advise or assist the trustee in the performance of his administrative duties; to act without independent investigation upon their recommendations; and instead of acting personally, to employ one or more agents to perform any act of administration, whether or not discretionary;

(25) to prosecute or defend actions, claims, or proceedings for the protection of trust assets and of the trustee in the performance of his duties; ....

We hold that the above two subsections are inapplicable to this case, and that it was error to award Grover attorney's fees. The issues and claims of this suit involve the proper compensation of Grover *as trustee.* These are issues particular to Grover. They do not involve the administration or defense of the estate or Grover in the performance of his duties as trustee. The reason for the confusion in deciding what is proper compensation is Grover's inadequate record keeping. That same confusion makes the resort to legal proceedings and appeals nonfrivolous, thereby negating any award of attorney's fees under I.C. § 12-121 and I.R.C.P. 54(e)(1). We therefore reverse the award of attorney's fees below.

For the foregoing reasons, we affirm in part and reverse in part. Total costs of appeal transcripts to be divided equally. Each party to bear its own responsibility for attorneys' fees incurred and costs of briefs.