## IN THE SUPREME COURT OF THE STATE OF IDAHO

### Docket No. 43743

JAMES ADAM SLAVENS, ALEXA )
SLAVENS, and TANNER SLAVENS, )
TWIN G HOLDINGS, LLC, and derivatively, )
THE ESTATE OF JAMES KENNETH )
SLAVENS, )
                                                )
     Plaintiffs-Respondents, )
                                                )
v. )
                                                )
MELANIE SLAVENS, both personally and )
as administrator of THE ESTATE OF )
JAMES KENNETH SLAVENS, )
                                                )
     Defendants-Appellants. )
_____ )

Pocatello, September 2016 Term

2016 Opinion No. 124

Filed: November 3, 2016

Stephen W. Kenyon, Clerk

Appeal from the District Court of the Seventh Judicial District of the State of Idaho, Bonneville County. Hon. Jon J. Shindurling, District Judge.

The judgment of the district court is <u>vacated</u> and the case is <u>remanded</u> for further proceedings.

Parsons, Smith, Stone, Loveland & Shirley, Burley, for appellants. William A. Parsons and Randy Stone argued.

John Simmons, JD LLM, PC, Idaho Falls, for respondents.

_____

BURDICK, Justice

     Melanie Slavens, both personally and as administrator of the Estate of James Kenneth Slavens, brings this appeal from the Bonneville County district court. After the death of James Kenneth Slavens (Jim), James Adam Slavens, Alexa Slavens, Tanner Slavens, Twin G Holdings, LLC, and Jim's Estate (Respondents) sought a declaratory judgment as to the parties' rights in Twin G Holdings, LLC (Twin G), which Jim formed before he died. The district court determined that Melanie had no rights in Twin G and entered judgment that: (1) Jim's three oldest children—James Adam, Alexa, and Tanner (the Eldest Children)—each own 33% of Twin

1

G; (2) the Eldest Children are Twin G's sole members; (3) James Adam is Twin G's sole manager; and (4) Melanie was never a member or manager of Twin G. We vacate and remand.

## I. FACTUAL AND PROCEDURAL BACKGROUND

On December 12, 2012, Jim was killed in a fatal car wreck. Jim predeceased his wife (Melanie) and five children. Those five children consisted of twins (Gracie and Grant) Jim had with Melanie, and the Eldest Children, who were from Jim's previous marriage.

Seven years before Jim died, he formed the Idaho LLC—Twin G—that is the subject of this appeal. On June 22, 2005, Jim formed Twin G for asset protection purposes. Jim's concerns about asset protection arose after a buyer to whom Jim had sold a business defaulted on debts owed to Jim and other creditors. When those creditors began pursuing Jim, he formed Twin G to shield his assets from a judgment. Twin G was named after Jim and Melanie's twins, Gracie and Grant. Twin G's Articles of Organization list Jim as Twin G's managing member. Twin G's Operating Agreement designates Jim and Johnny Slavens, Jim's brother, as members, with Jim owning 1% and Johnny owning the remaining 99%. Johnny held a largely passive role in Twin G and testified he held the 99% ownership interest in Twin G for Jim's benefit until Jim's death and then for the Eldest Children's benefit.

Jim's relationship with Johnny soured when real property recorded in Johnny's name became involved in a lawsuit in spring 2011. Although Johnny had deeded the property to Jim, Jim never recorded the deed. Therefore, Johnny blamed Jim for the lawsuit. After Jim settled the lawsuit, Johnny told Jim he "need[ed] to absolutely avoid th[o]se types of situations going forward" and expressed hesitation about "allow[ing] someone else to use [Johnny's] name on things for which [he] d[id] not fully understand the details."

Apparently to that end, in April 2011, Jim took efforts to remove Johnny from Twin G. Jim first sent to Johnny an "Addendum" to Twin G on April 21, 2011. If signed, the Addendum purported to transfer Johnny's ownership interest. The Addendum recited that Johnny "desires to have no interest in Twin G" and, therefore, "has agreed to convey his entire interest to James K. Slavens and Melanie Slavens in such a way that they will share an equal interest in the property." When Jim sent the Addendum to Johnny, Jim explained he was unsure whether the Addendum was the proper way to transfer Johnny's ownership interest and requested that Johnny wait to sign it. Johnny never signed the Addendum.

2

One day later, Jim sent to Johnny an Amended Certificate of Organization for Twin G. Jim, who had already filled in the Amended Certificate, requested Johnny's signature so that Jim "can get [Johnny] out of [Twin G.]" Whereas the Addendum indicated Johnny was merely transferring his ownership interest, the Amended Certificate went further. The Amended Certificate indicated Johnny was "[d]elet[ing]" himself as a member, adding Melanie as a member or manager, and authorizing Jim's ownership of 75% of Twin G and Melanie's ownership of the remaining 25%. Johnny signed and returned the Amended Certificate to Jim in April 2011. However, Jim never filed it with the Idaho Secretary of State. Instead, Jim kept the Amended Certificate in his personal files for approximately nineteen months. Jim could have filed the Amended Certificate when filing Twin G's annual reports in 2011 and 2012, but did not do so. Jim died without filing the Amended Certificate.

After Jim died, Melanie opened a probate proceeding in Utah, where Jim was domiciled, and was appointed special administrator of Jim's estate. Melanie then asserted rights in Twin G and filed the Amended Certificate with the Idaho Secretary of State. Johnny maintained he still had membership and ownership rights in Twin G, despite having executed the Amended Certificate. As Johnny explained, delivery of the Amended Certificate to Jim was conditional on Jim filing it with the Idaho Secretary of State, which Jim never did. Thus, in August 2013, Johnny executed transfer documents purporting to transfer and assign membership, management, and ownership rights in Twin G to the Eldest Children.

In October 2013, Respondents filed a complaint seeking a declaratory judgment as to their rights in Twin G. Melanie moved to dismiss, which the district court denied. Respondents then moved for partial summary judgment, which the district court granted. Melanie filed a motion to reconsider, which the district court denied. Thereafter, the district court entered a certified judgment under Idaho Rule of Civil Procedure 54(b). Melanie timely appealed.

## II. ISSUES ON APPEAL

1. Did the district court properly deny Melanie's motion to dismiss for lack of jurisdiction?
2. Did the district court abuse its discretion by admitting Johnny's affidavit?
3. Is the prevailing party entitled to attorney fees on appeal?

## III. STANDARD OF REVIEW

A district court's decision to exercise jurisdiction and proceed with an action even though a similar action is pending in another court is reviewed for abuse of discretion. *Klaue v. Hern*,

133 Idaho 437, 439, 988 P.2d 211, 213 (1999). To determine whether the district court abused its discretion, this Court evaluates whether the district court: (1) correctly perceived the issue as one of discretion; (2) acted within the outer boundaries of its discretion and consistently with relevant legal standards; and (3) reached its decision by an exercise of reason. *Swallow v. Emergency Med. of Idaho, P.A.*, 138 Idaho 589, 592, 67 P.3d 68, 71 (2003). However, "the issue of whether a district court has subject matter jurisdiction is a question of law, over which we exercise free review." *Chapple v. Madison Cnty. Officials*, 132 Idaho 76, 78, 967 P.2d 278, 280 (1998).

A district court's evidentiary rulings are reviewed for abuse of discretion. *Kozlowski v. Rush*, 121 Idaho 825, 827, 828 P.2d 854, 856 (1992). Thus, we review application of the Deadman's Statute for abuse of discretion. *Lunders v. Estate of Snyder*, 131 Idaho 689, 699, 963 P.2d 372, 382 (1998).

## IV. ANALYSIS

We analyze three primary issues in this appeal. First, we determine whether the district court properly denied Melanie's motion to dismiss for lack of jurisdiction. Second, we analyze whether the district court abused its discretion by admitting Johnny's affidavit. Third, we decide whether the prevailing party is entitled to attorney fees on appeal.

**A.     The district court properly denied Melanie's motion to dismiss for lack of jurisdiction.**

Our first inquiry is whether the district court properly denied Melanie's motion to dismiss for lack of jurisdiction. Melanie contends dismissal was required because the Utah probate proceeding was already underway and involved the same issues and the same parties. In contrast, Respondents argue the district court properly exercised jurisdiction because the Utah probate proceeding did not address key issues raised in the Idaho action—membership, management, and ownership of Twin G.

Recognizing the pending Utah probate proceeding involving the same parties, the district court analyzed Melanie's motion to dismiss under Idaho Rule of Civil Procedure 12(b)(8). That rule permits dismissal on the basis of "another action pending between the same parties for the same cause." I.R.C.P. 12(b)(8). "Two tests govern the determination of whether a lawsuit should proceed where a similar lawsuit is pending in another court." *Klaue*, 133 Idaho at 440, 988 P.2d at 214. The first test applies when "the other case has gone to judgment, in which event the doctrines of claim preclusion and issue preclusion may bar additional litigation." *Id.* The district

4

court properly recognized the first test does not apply because the Utah probate proceeding had not gone to judgment.

The second test applies when a district court, "although not barred from deciding the case, should nevertheless refrain from deciding it." *Id.* Three primary considerations guide whether dismissal is proper:

> In deciding whether to exercise jurisdiction over a case when there is another action pending between the same parties for the same cause, a trial court must evaluate [1] the identity of the real parties in interest and the degree to which the claims or issues are similar. The trial court is to consider [2] whether the court in which the matter already is pending is *in a position to determine the whole controversy and to settle all the rights of the parties*. Additionally, the court may take into account [3] the occasionally competing objectives of judicial economy, minimizing costs and delay to litigants, obtaining prompt and orderly disposition of each claim or issue, and avoiding potentially inconsistent judgments.

*Id.* (quoting *Diet Ctr., Inc. v. Basford*, 124 Idaho 20, 22–23, 855 P.2d 481, 483–84 (Ct. App. 1993)).

Here, the district court properly concluded Rule 12(b)(8) did not require dismissal. After first perceiving the issue as discretionary, the district court acted consistently with relevant legal standards articulated in *Klaue*. The district court acknowledged how the Utah probate proceeding and the Idaho action involved the same parties, but not the same issues. Whereas the Utah probate proceeding served to administer Jim's estate, the Idaho action served to determine the composition of Twin G. Those issues are too dissimilar to constitute the "same cause" under Rule 12(b)(8). As the district court succinctly recognized, Respondents' "claim for membership in Twin G . . . is not at issue in the Utah probate proceeding." The district court further recognized that dismissing the Idaho action would have required Respondents to file a separate action or seek a petition for allowance in the Utah probate proceeding. But, since petitions for allowance are discretionary, "there [was] no guarantee that the Utah court would hear [Respondents'] claims." Thus, to save "time, expense, and delay . . . and to ensure [Respondents'] case is heard," the district court denied Melanie's motion to dismiss.

On appeal, Melanie takes issue with how the district court evaluated her motion to dismiss under Rule 12(b)(8). Melanie contends the district court should have evaluated her motion to dismiss as one for lack of subject matter jurisdiction under Idaho Rule of Civil Procedure 12(b)(1). According to Melanie, the district court had no discretion to exercise

jurisdiction because the Utah probate proceeding had exclusive jurisdiction and, thus, deprived the district court of subject matter jurisdiction.

We reject Melanie's argument for two reasons. First, Melanie's arguments against jurisdiction, explored above, center on the Utah probate proceeding being "another action pending between the same parties for the same cause." *See* I.R.C.P. 12(b)(8). Melanie's arguments therefore triggered the district court's discretion under Rule 12(b)(8). Second, article V, section 20 of the Idaho Constitution provides that: "The district court shall have original jurisdiction in all cases, both at law and in equity . . . ." Melanie points to no authority establishing that the Utah probate proceeding had exclusive jurisdiction to determine the parties' rights in Twin G. Melanie cites to a flurry of Idaho and Utah statutes, but she fails to cogently explain how those statutes establish the Utah probate proceeding's exclusive jurisdiction. Melanie overlooks that the district court fully explained why the Utah probate proceeding did not have exclusive jurisdiction, even if it had concurrent jurisdiction. To that end, the district court cited *Diet Ctr., Inc. v. Basford*, 124 Idaho 20, 22, 855 P.2d 481, 483 (Ct. App. 1993) for the principle that:

> Where two actions between the same parties, on the same subject, and to test the same rights, are brought in different courts having concurrent jurisdiction, the court which first acquires jurisdiction, its power being adequate to the administration of complete justice, retains its jurisdiction and may dispose of the whole controversy, and no court of coordinate power is at liberty to interfere with its action.

Thus, as the district court acknowledged, when the other court has not yet exercised jurisdiction, dismissal is improper even though the other court may exercise jurisdiction over the issue. *Zaleha v. Rosholt, Robertson & Tucker, Chtd.*, 129 Idaho 532, 534, 927 P.2d 925, 927 (Ct. App. 1996). Since the Utah probate proceeding never exercised jurisdiction over the parties' rights in Twin G, the district court properly concluded the Utah probate proceeding did not have exclusive jurisdiction. We affirm that the district court properly denied Melanie's motion to dismiss.

**B.    The district court abused its discretion by admitting Johnny's affidavit.**

Next, we analyze whether the district court abused its discretion by admitting Johnny's affidavit. Melanie argues Johnny's affidavit is inadmissible under the "Deadman's Statute," Idaho Code section 9-202(3), because it contains testimony of alleged oral agreements Johnny had with Jim. Specifically, Johnny testified: (1) he, at Jim's request, agreed to hold a 99%

6

ownership interest in Twin G for the benefit of Jim and the Eldest Children; and (2) he delivered the Amended Certificate to Jim on the condition that only Jim could file it.

The Deadman's Statute makes the following witnesses incompetent to testify:

> Parties or assignors of parties to an action or proceeding, or persons in whose behalf an action or proceeding is prosecuted against an executor or administrator, upon a claim or demand against the estate of a deceased person, as to any communication or agreement, not in writing, occurring before the death of such deceased person.

I.C. § 9-202(3); *see also* I.R.E. 601(b).[1]

We have observed that the Deadman's Statute only "bars (1) certain persons from testifying (2) in specified actions (3) as to certain communications." *Argyle v. Slemaker*, 99 Idaho 544, 547, 585 P.2d 954, 957 (1978). All three requirements are clearly met in this case because: (1) by purporting to transfer and assign rights in Twin G to the Eldest Children, Johnny is an "assignor[] of parties" to the action; (2) the Eldest Children have made a claim against Jim's estate; and (3) Johnny's testimony concerns a communication or agreement, not in writing, occurring before Jim's death. Thus, the literal elements of the Deadman's Statute indicate Johnny's affidavit is inadmissible.

Nevertheless, the district court held that Johnny's affidavit was admissible under two exceptions to the Deadman's Statute. The first exception applies when written evidence substantiates the oral testimony. We have stated that "[w]hen testimony of an alleged oral agreement is presented alone, it is inadmissible; however, 'written evidence to substantiate the alleged agreement' is admissible." *Montgomery v. Montgomery*, 147 Idaho 1, 8, 205 P.3d 650, 657 (2009) (quoting *In re Estate of Keeven*, 110 Idaho 452, 460, 716 P.2d 1224, 1232 (1986)). For example, in *In re Estate of Keeven*, 110 Idaho at 459–60, 716 P.2d at 1231–32, we addressed whether the Deadman's Statute barred testimony as to the decedent's unwritten intentions. The appellant contended his wife had intended to convey to him an interest in real property, but died before doing so. *Id.* We noted that the appellant had "produced no written evidence whatsoever to establish his claim . . . ." *Id.* at 460, 716 P.2d at 1232. We emphasized that "what [the appellant] claims he and his wife intended to do in the future cannot rise to the level of written evidence to substantiate the alleged agreement . . . ." *Id.* Thus, we held that the Deadman's

---

[1] The only difference between Idaho Code section 9-202(3) and Idaho Rule of Evidence 601(b) is "I.C. § 9-202(3) has a comma after the phrase 'estate of a deceased person,' whereas that comma is omitted in I.R.E. 601(b)." *Montgomery v. Montgomery*, 147 Idaho 1, 8 n.1, 205 P.3d 650, 657 n.1 (2009).

7

Statute barred the testimony because "[w]hat [the appellant] is relying upon here is an oral agreement, pure and simple." *Id.*

The second exception applies when the oral testimony merely concerns "a state of affairs or matters of fact occurring before the decedent's death." *Argyle*, 99 Idaho at 547, 585 P.2d at 957. At issue in *Argyle* was whether the Deadman's Statute barred testimony concerning the physical condition of a deed at the time of delivery. *Id.* at 546–47, 585 P.2d at 956–57. With that testimony, the appellants aimed to have the deed declared void by showing the deed lacked a description of the property at the time of delivery. *Id.* We held that the Deadman's Statute did not bar the testimony, explaining that testimony as to the deed's physical condition at the time of delivery concerned "a state of affairs or matters of fact occurring before the decedent's death." *Id.* at 547, 585 P.2d at 957.

In this case, the district court erred by determining that the above exceptions were satisfied. First, written evidence does not substantiate Johnny's testimony. The district court concluded emails between Johnny and Jim substantiate Johnny's testimony. Yet, the record does not support that conclusion. As a preliminary matter, we note that the district court did not isolate any specific emails that allegedly substantiate Johnny's testimony. Similarly, Respondents have not cited to any specific emails, but instead broadly assert that the emails as a whole are "replete as written corroboration and substantiation of the dialogue as Johnny explains it in his testimony." Our review of the emails forces us to disagree. The emails do not indicate Johnny and Jim ever agreed that Johnny would hold the 99% ownership interest in Twin G for the benefit of Jim and the Eldest Children. Nor do the emails show Johnny delivered the Amended Certificate to Jim on the condition that only Jim could file it. The most salient email shows Jim asked Johnny to sign the Amended Certificate "and send it, so [Jim] can get [Johnny] out of [Twin G.]" But that single email, standing alone, is too tenuous to substantiate Johnny's testimony. Therefore, as in *Keeven*, we conclude Johnny's testimony is based on oral communications, "pure and simple."

Moreover, Johnny's testimony exceeds the exception for testimony concerning a state of affairs or matters of fact. The district court concluded, without analysis, that Johnny's testimony "declares matters of fact as to what took place at the time the agreement was made and describes the state of Jim's affairs as they related to [Twin G]." However, even a cursory review of Johnny's affidavit unveils testimony as to alleged oral agreements with Jim. Unlike the

8

testimony concerning the deed's physical condition in *Argyle*, Johnny repeatedly testified he engaged in conduct either because Jim had requested it or because of alleged oral agreements with Jim. Thus, Johnny's testimony exceeds the exception for testimony concerning a state of affairs or matters of fact.

In sum, the district court's application of the Deadman's Statute constitutes an abuse of discretion. Because Johnny's affidavit is the only evidence supporting the judgment in Respondents' favor, we vacate the judgment and remand this case for further proceedings consistent with this opinion. As guidance for the district court on remand, we note that, absent Johnny's affidavit, the record before us illustrates Johnny dissociated as a member of Twin G at the moment he communicated his agreement to sign the Amended Certificate. Quite clearly, Johnny manifested notice of his "express will to withdraw as a member" under Idaho Code section 30-6-602(1) by communicating his agreement to sign the Amended Certificate, which recited he was "[d]elet[ing]" himself as a member.

**C.     We decline to award attorney fees on appeal.**

Both parties seek attorney fees on appeal. They argue each other has acted frivolously, unreasonably, or without foundation. This Court has explained it will only award attorney fees "if the action was pursued, defended, or brought frivolously, unreasonably, or without foundation." *Idaho Military Historical Soc'y, Inc. v. Maslen*, 156 Idaho 624, 633, 329 P.3d 1072, 1081 (2014) (citation omitted). "Fees will generally not be awarded for arguments that are based on a good faith legal argument." *Easterling v. Kendall*, 159 Idaho 902, 918, 367 P.3d 1214, 1230 (2016). Because both parties made good faith legal arguments, we decline to award attorney fees on appeal.

## V. CONCLUSION

Because we conclude the Deadman's Statute bars Johnny's affidavit, we vacate the judgment and remand this case for further proceedings consistent with this opinion. Costs to Melanie.

Chief Justice J. JONES and Justices  EISMANN, W. JONES and HORTON, **CONCUR.**

9